# THE SICURANZA LAW FIRM LLC

445 Broad Hollow Road, Suite 25
Melville, New York 11747

Phone: 631-953-1513
Fax:    631-891-4200

April 30, 2013

**BY EXPRESS DELIVERY AND CM/ECF SYSTEM**

Hon. Sandra J. Feuerstein
United States District Court Eastern District of New York, 100
Federal Plaza, Central Islip, New York 11722

Re: Case No. 12-cv2446 (SFJ)(WDW)

*Patricia Roth a/k/a Patricia McCarthy,
Individually and on behalf of all others similarly
situated v. CitiMortgage, Inc.,*

Dear Judge Feuerstein:

Patricia Roth, through undersigned counsel, recently received correspondence from CitiMortgage, Inc. ("Citi") dated April 26, 2013 (the "Letter"). The Letter analyzes jurisprudence regarding Citi's claimed designated address for receiving QWRs. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141 (10th Cir. 2013).

In *Berneike*, the Tenth Circuit concluded that CitiMortgage properly designated a single and exclusive address for receiving QWRs based upon the record presented therein. The Tenth Circuit noted that Citi issued a "Welcome Letter" identifying the same designated Maryland address as identified in the plaintiff's monthly mortgage statements. Accordingly, the Tenth Circuit held that Citi properly satisfied Regulation X's requirement for designating a separate and exclusive QWR address. 24 C.F.R. § 3500.21(e)(1).

The *Berneike* decision is wholly inapplicable to the underlying matter where the instant factual record identified two unique designated addresses for receiving QWRs. In its motion to dismiss, Citi identified the following address for receiving QWRs: "Attn: Customer Research Team, PO Box 10002, Hagerstown, MD 21742-0002." On the other hand, the back of Ms. Roth's monthly mortgage statements for April and May 2011 identified the following address buried in the fine print: "[f]or residential Customers only: Pursuant to § 6 of RESPA, a 'qualified written request' regarding the servicing of your loan must be sent to this address: Citimortgage, Inc. att: Customer Research Team, PO box 9442, Gaithersburg, MD 20898-9442." Citi failed to establish a separate and exclusive address based upon the factual record presented herein. See *Catalan v. RBC Mortg. Co.*, 2008 WL 2741159 (N.D. Ill. July 8, 2008).

There is no suggestion that the Tenth Circuit was presented with more than one Citi address for receiving QWRs. Notwithstanding, Citi apparently possessed two different "designated addresses" for

receiving QWRs in the instant action; therefore, *Berneike* lacks applicability where Citi cannot satisfy the legal requirement for establishing a "separate and exclusive" office for receiving QWRs pursuant to 24 C.F.C. § 3500.21(e)(1).

The *Berneike* decision is further distinguished from the instant case as it recognized that "Citi acknowledged Berneike's inquiry and responded that it believed her account was correctly serviced. Citi provided the specific amounts of Berneike's payments for 2008, explaining that "[d]ue to an increase in your (her) escrow disbursements since your (her) previous analysis, a shortage developed." Id. at 104." The instant case is distinguished from *Berneike* because, rather than providing the requested loan servicing information, Citi chose to completely circumvent Ms. Roth's attorney by directly corresponding with Ms. Roth in attempt to persuade her to modify her loan. This was done despite Citi's execution of a "Stipulation and Consent to the Issuance of a Consent Order" ("Consent Order"), dated April 13, 2011. Said Consent Order specifically stated (1) "[t]he OCC has identified certain deficiencies and <u>unsafe or unsound practices in residential mortgage servicing</u> and in the Bank's initiation and handling of foreclosure proceedings", (2) "[t]<u>he Bank has committed to taking all necessary and appropriate steps to remedy the deficiencies and unsafe or unsound practices identified by the OCC, and to enhance the Bank's residential mortgage servicing</u>…….", and (3) "[t]he Board shall <u>ensure that the Bank achieves and thereafter maintains compliance with this Order</u>, including, without limitation, successful implementation of the Action Plan. The Board shall further <u>ensure that</u>, upon implementation of the Action Plan, <u>the Bank achieves and maintains effective mortgage servicing</u>, ………" Emphasis added. See Page 1 of the Consent Order.

Thereafter, by its letters to the Federal Reserve Bank of New York on May 26, 2011 and on July 12, 2011, Citi provided further assurances that it would abide by directives of the above-mentioned Consent Order. The May 26, 2011 letter stated, in pertinent part, that "<u>at about 90 days' delinquency, the CitiFinancial mortgage account is transferred to CitiMortgage for further servicing</u>, loss mitigation, and foreclosure processing…". The July 12, 2011 letter stated, in pertinent part, that (1) CitiFinancial was submitting its "written plan for **strengthening coordination of communications with borrowers**, both oral and written, related to Loss Mitigation and foreclosure activities…" and that "**[t]he purpose of the plan is to ensure that borrower communications are timely and effective and are designed to avoid confusion to borrowers…..**" Despite the Consent Order and its assurances to the Federal Reserve Bank of New York, in circumventing Ms. Roth's attorney and attempting to steer Ms. Roth into submitting a loan modification application, Citi purposefully broke its promises thereby creating confusion and seriously inhibiting effective communication.

For the foregoing reasons, Patricia Roth respectfully prays that Your Honor disregard the *Berneike* decision and properly deny Citi's pending Rule 12(b)(6) motion to dismiss.

Respectfully submitted,

*Rosario G. Sicuranza*
Rosario G. Sicuranza

cc: Therese Craparo, Esq. *(via ECF)*
    David Pope, Esq. *(via ECF)*
    Debra Bogo-Ernst, Esq. *(via ECF)*