UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
PATRICIA ROTH, individually and on behalf
of others similarly situated,

               Plaintiff,

    -against-

CITIMORTGAGE INC.,

               Defendant.
--------------------------------------------------------------X

FEUERSTEIN, J.

**ORDER**
12-CV-2446 (SJF)(WDW)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   SEP 1 1 2013   ★

**LONG ISLAND OFFICE**

      On May 16, 2012, plaintiff Patricia Roth ("plaintiff") commenced this action against CitiMortgage Inc. ("defendant"), alleging violations of the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. §§ 2601, et seq., the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq., and New York General Business Law ("GBL") § 349. [Docket Entry No. 1] ("Compl."). Plaintiff filed an amended complaint on August 8, 2012. [Docket Entry No. 5] ("Am. Compl."). Now before the Court is defendant's motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. [Docket Entry No. 12]. For the reasons that follow, the motion is GRANTED.

I.     Background

      Defendant services a second mortgage on plaintiff's home, which she took out on October 22, 2005. Am. Compl. at ¶¶ 7-8. On April 8, 2011, plaintiff's counsel sent a letter to defendant "in order to inquire as to the accounting and servicing of [plaintiff's] mortgage and her need for understanding and clarification of various charges, credits, debts, transactions, reversals,

1

actions, payments, analyses and records related to the servicing of her loan from its origination to the present date." Compl. Ex. 2 (the "April 8 letter").[1] The letter states that plaintiff is concerned that fraudulent practices by mortgage brokers and servicers "may have negatively affected her credit rating, mortgage account and/or the debt or payments to which she may be legally obligated," that she is "disputing the validity" of her debt, and that her counsel is "making inquiries as to whether [plaintiff] may been [sic] a victim of predatory lending." Id. The letter further states that in order "[t]o independently validate [plaintiff's] debt, [her counsel] needs to conduct a complete exam, audit, review and accounting of [the] mortgage from its inception through the present date" and requests (1) "copies of all documents pertaining to the origination of the alleged mortgage and note" (listing twenty (20) categories of documents), and (2) a "copy of the loan history including all payments made, all fees incurred, what has been paid out of the escrow account, and how all payments were applied." Id. The letter also requests that defendant "conduct [its] own investigation and audit of [plaintiff's] account since its inception to validate the debt [defendant] currently claim[s] she owes" and "refrain from reporting any negative credit information . . . to any credit-reporting agency until [defendant] respond[s] to each of [plaintiff's counsel's] requests." Id.

Plaintiff's counsel sent the April 8 letter to two (2) addresses: (1) CMI Workout MS, 420 10000 Technology Drive, O'Fallon, MD 63368-2240; and (2) CitiMortgage, Inc., P.O. Box 689196, Des Moines, IA 50368-9196. Compl. at 8 n.3. On April 9, 2011, plaintiff's counsel sent a second letter to the same addresses, which was identical to the April 8 letter except for the

---

[1]    The letter is titled "Qualified Written Request, Complaint, Dispute of Debt and Validation of Debt Letter, TILA Request" and states, "Please treat this letter as a 'qualified written request' under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e)." Compl. Ex. 2.

inclusion of a "Letter of Authorization" stating that plaintiff authorized her counsel to speak with defendant on her behalf. Compl. Ex. 3 (the "April 9 letter").

On April 18, 2011, defendant sent a response to plaintiff's counsel, stating that, "[w]hile [counsel's] letter has asked numerous questions about the origination and/or servicing of [her] clients' [sic] mortgage loan, it appears [counsel's] immediate concern is obtaining financial assistance," and that defendant therefore "mailed a financial package to [plaintiff], which [counsel] may request [she] complete and return . . . so [defendant] may determine what type of assistance will best suit [her] needs." Compl. Ex. 4. The response further stated that defendant was "unable to correct or adjust the credit report exactly as [counsel] requested" and therefore "placed an 'In Dispute' comment on the CitiMortgage trade line." Id.

On June 11, 2011, plaintiff's counsel sent a third letter to defendant, which was identical to the April 8 and April 9 letters except for an additional assertion that defendant's previous response on April 18, 2011 failed to comply with RESPA. Compl. Ex. 6.

On July 11, 2011, defendant sent plaintiff a packet titled "Workable Solutions," which requested certain financial information "so that [defendant] may evaluate [plaintiff's] situation and estimate what, if any, options [she] may have to resolve the mortgage delinquency and avoid foreclosure." Compl. Ex. 7.

On February 8, 2012, in response to a complaint filed by plaintiff, the New York State Department of Financial Services (the "Department of Financial Services") "acknowledge[d] receipt of [plaintiff's] . . . complaint against [defendant]" and stated that it had directed defendant "to respond to [plaintiff's] issues by March 9, 2012." Compl. Ex. 8. On March 2, 2012, the Department of Financial Services forwarded defendant's response to plaintiff, Compl. Ex. 10, and on March 14, 2012, defendant sent its response to plaintiff directly, stating as follows:

> The documents you submitted make a number of unsubstantiated allegations and demand that CitiMortgage address numerous questions, or requests for records and information, about the origination and servicing of your loan. CitiMortgage does not believe these allegations are legitimate. With regard to your questions about the servicing of your loan, if you send CitiMortgage a statement of the reasons why you believe there have been errors in the servicing of your loan, CitiMortgage will research and respond to any specific servicing questions. CitiMortgage is not required by any applicable state and/or federal law to undertake a life-of-loan review of the servicing of your loan or to research general, unsubstantiated claims about alleged servicing errors.

Compl. Ex. 11. The letter further stated that a copy of plaintiff's Note and Deed of Trust was enclosed and that defendant had requested a "full payment history" to be sent to plaintiff. Id.[2]

Plaintiff later received a transaction history on her account and a copy of the original mortgage and Note. Am. Compl. at ¶ 18.

II.     Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

---

[2]     Although plaintiff's original complaint attached the correspondence from the Department of Financial Services, the amended complaint omits the documents and obscures the fact that the March 14, 2012 correspondence was sent in response to a complaint filed by plaintiff, stating only that "[o]n March 14, 2012, . . . an employee with [defendant] . . . eventually acknowledged that the company would submit a request for a fully [sic] payment history to arrive under separate cover, well outside of RESPA original [sic] 60 day deadline to provide said information" and that "[a]gain, CitiMortgage failed to communicate with undersigned counsel as the letter was directly issued to plaintiff." Am. Compl. at ¶ 17.

4

factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Looney v. Black, 702 F.3d 701, 719-20 (2d Cir. 2012); McGarry v. Pallito, 687 F.3d 505, 510 (2d Cir. 2012); Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679; see also Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("A court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.") (quotations and citations omitted). Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-21 (2d Cir. 2010); see also Matson v. Bd. of Educ. of City School Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011) ("While a complaint need not contain 'detailed factual allegations,' it requires 'more than an unadorned, the defendant-unlawfully-harmed-me accusation.'") (quoting Iqbal, 556 U.S. at 678).

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein;

5

to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint relies heavily and which are, thus, rendered integral" to the complaint. Kleinman v. Elan Corp., plc, 706 F.3d 145, 147 (2d Cir. 2013); Wilson v. Merrill Lynch & Co., Inc., 671 F.3d 120, 123 (2d Cir. 2011); Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).[3]

III.    Discussion

    A.    Count I – Violation of RESPA § 2605(e)(1), (2)

RESPA requires, inter alia, that servicers of "federally related mortgage loan[s]" respond in a prescribed time and manner to "qualified written requests" ("QWRs") from borrowers and provides a private right of action for violations of the statute.  12 U.S.C. §§ 2605(e)-(f).[4] According to defendant, plaintiff's RESPA claims must be dismissed because, inter alia: (1) plaintiff's letters were not sent to the address designated by defendant for QWRs, and therefore the letters did not trigger its duties under RESPA; and (2) plaintiff has failed to allege that she incurred actual damages from the RESPA violations or that there is a basis for the recovery of statutory damages (i.e., that defendant engaged in a pattern or practice of noncompliance with RESPA).

---

[3]    Although the amended complaint omits the documents attached to the original complaint, the Court may still consider the documents in deciding the pending motion.  See Poindexter v. EMI Record Grp., Inc., No. 11 Civ. 559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) ("[E]ven though the Amended Complaint is the operative pleading, the Court may still credit admissions in the original complaint and attached exhibits."); Kleinman, 706 F.3d at 147.

[4]    A QWR is defined as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that-- (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

1.   Designated Address

RESPA's implementing regulation provides that "a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests" by "notice either included in the Notice of Transfer or separately delivered by first-class mail, postage prepaid." 24 C.F.R. § 3500.21(e)(1) ("CFR § 3500.21(e)(1)"). If the borrower fails to send the correspondence to an address properly designated for the receipt of QWRs, the servicer's acknowledgment and response obligations under RESPA are not triggered. See, e.g., Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1149 (10th Cir. 2013) ("Failure to send the QWR to the designated address for receipt and handling of QWRs does not trigger the servicer's duties under RESPA.") (internal quotation marks and alteration omitted) (citing Regions Hosp. v. Shalala, 522 U.S. 448, 457 (1998)); Stein v. Nat'l City Bank, Civ. No. 09-1995, 2010 WL 5559528, at *8 (D. Minn. 2010) ("If a borrower does not send the qualified written request to the proper address, he cannot create a triable issue of material fact that the servicer's RESPA obligations were triggered."), aff'd sub nom. Stein v. Chase Home Fin., LLC, 662 F.3d 976 (8th Cir. 2011); Nikiforuk v. CitiMortgage, Inc., No. 11-10815, 2011 WL 7113469, at *3, *6 (E.D. Mich. Dec. 27, 2011); Daddabbo v. Countrywide Home Loans, Inc., No. C09-1417, 2010 WL 4262027, at *2 (W.D. Wash. Oct. 27, 2010); Steele v. Green Tree Serv., LLC, No. 3:09-CV-0603, 2010 WL 3565415, at *3 (N.D. Tex. Sept. 7, 2010), aff'd 453 F. App'x 473 (5th Cir. 2011); Catalan v. RBC Mortg. Co., No. 05 C 6920, 2008 WL 2741159, at *5 (N.D. Ill. July 8, 2008).

Plaintiff argues that defendant failed to properly designate a separate and exclusive address for the receipt and handling of QWRs because: (1) notice of the designated address was provided on the back page of plaintiff's monthly mortgage statements and therefore was not "separately delivered," which plaintiff asserts is required by CFR § 3500.21(e)(1); and

7

(2) plaintiff's monthly mortgage statements for April and May 2011 identify one (1) designated address, while her March 2012 statement identifies a different designated address. [Docket Entry No. 15] ("Pl. Memo.") at 6-8.[5]

In support of the argument that notice of a designated QWR address on the back of a monthly mortgage statement does not comply with CFR § 3500.21(e)(1), plaintiff relies upon Catalan v. RBC Mortgage Co., No. 05 C 6920, 2008 WL 2741159, at *5 (N.D. Ill. July 8, 2008). In Catalan, notice of the designated QWR address was purported to have been provided in a letter whose "principal purpose" was debt collection, not in a monthly mortgage statement. Id. at *8. The letter was "furnished to [the plaintiffs] as a result of [their] failure to meet the terms and conditions on [their] mortgage loan," stated that they "must pay a certain sum by a certain date to cure the default," and advised them "of the consequences of failing to pay." Id. at *7. The letter stated that "communication regarding this notice should be sent to the attention of Denise Pridgen" in the "Mortgage Collections" department, and the upper right hand corner of the letter contained two (2) addresses, one (1) for "Mortgage Loan Services," and the other for Payments." Id. According to the defendant, the address for "Mortgage Loan Services" was the designated address for QWRs.

The court concluded that the letter did not comply with CFR § 3500.21(e)(1) as a matter of law because it failed to meet two (2) requirements of the regulation. First, the court determined that the notice failed to "advise customers of a 'separate and exclusive address' that they must use for the mailing of inquiries regarding the servicing of their mortgage loans"

---

[5]     Plaintiff's arguments related to the consent order entered into between Citibank N.A., defendant's parent company, and the Comptroller of the Currency are inapposite. See Pl. Memo. 8-10.

because: (1) "the only sense in which the letter establishes an 'exclusive' address is the sentence directing communication 'regarding this notice' to be sent to the attention of Denise Pridgen"; (2) "the letter essentially demands payment, [and therefore] it is just as likely that [the] [p]laintiffs would have read the letter as directing them to send their correspondence to Ms. Pridgen at the address for payments, rather than the other address listed for 'Mortgage Loan Services' that [the defendant] insists is the separate and exclusive address for QWRs"; and (3) even if the letter could be construed as directing non-payment correspondence to the Mortgage Loan Services address, it "in no way warns customers that the [Mortgage Loan Services] address is an exclusive address—that is, that they must send their non-payment related correspondence to that address and only that address on pain of losing any RESPA claim that they may have." Id. at *8. Second, the court concluded that, because the notice was included in a debt collection letter, it was not "conveyed in a separate document" and did not "include only information concerning the designated 'separate and exclusive address' and its purpose." Id. In imposing this second requirement, the court stated that it "must presume that [the U.S. Department of Housing and Urban Development], in implementing the will of Congress, included the 'separately delivered' requirement to ensure that borrowers would not be blindsided by notices of separate and exclusive addresses buried in the fine print of complex documents or conveyed subtly in communications from mortgage servicers." Id. at *7.

The Court declines to interpret CFR § 3500.21(e)(1) as imposing, in addition to the requirement that the notice effectively advise the borrower of the designated address, an additional requirement that notice be "conveyed in a separate document" containing "only information concerning the designated 'separate and exclusive address' and its purpose." Id. Although the Catalan court is correct that RESPA is a consumer protection statute and that

9

notice of the designated address must therefore be clear and unambiguous, it does not follow that notice included with other information, such as a monthly mortgage statement, is improper, and such an interpretation is not required by the plain language of the regulation. The material issue is whether the notice was effective, and the Court declines to adopt a formalistic requirement that the notice must also have been conveyed in a separate document.

Here, the notice provided by defendant contains none of the ambiguities that concerned court in <u>Catalan</u>. The back of plaintiff's monthly mortgage statements state, in a section titled "Customer Service," as follows:

> For Residential Customers Only: PURSUANT TO § 6 OF RESPA, A 'QUALIFIED WRITTEN REQUEST' REGARDING THE SERVICING OF YOUR LOAN MUST BE SENT TO THIS ADDRESS: CITIMORTGAGE, INC. ATTN: CUSTOMER RESEARCH TEAM, PO BOX 10002, HAGERSTOWN, MD 21749-0002. A 'qualified written request' is written correspondence, other than notice on a payment coupon or statement, which includes your name, account number and the reason(s) for the request.

Compl. Ex. 12. Unlike the letter in <u>Catalan</u>, this notice specifically references RESPA and QWRs and clearly designates a single address to which QWRs "must" be sent. Furthermore, the notice is not "buried" or "conveyed subtly" in a document whose purpose is debt collection, <u>Catalan</u>, 2008 WL 2741159, at *7, but is rather set off in a separate section and in capital letters. See <u>Childress v. CitiMortgage, Inc.</u>, Civ. No. 08-1137, at *19 (D.N.M. Feb. 19, 2010) (slip opinion) ("In Catalan, the address was purportedly provided in a demand for payment, and the communication sent by the servicer was not clear about which of two addresses the borrower should use. It was these facts that led that court to conclude that 'the notice must be separate and must advise customers of a separate and exclusive address that they must use for the mailing of inquiries regarding the servicing of their mortgage loans. In the present case, however, Plaintiff received notice of the address every month on his account statements, and the Maryland address

was clearly identified on the statements as the exclusive address for qualified written requests.") (internal quotation marks omitted). Moreover, the fact that defendant changed the designated address some time between May 2011 and March 2012 is irrelevant to the effectiveness of the notice, as the designated address was clearly indicated on the monthly statements and there was only one (1) address listed on each statement.

Therefore, defendant's designation of a separate and exclusive address for the receipt of QWRs on plaintiff's monthly mortgage statements complied with CFR § 3500.21(e)(1), and plaintiff's letters, sent to addresses other than those designated, did not trigger defendant's acknowledgment and response obligations under RESPA. Accordingly, plaintiff's RESPA claims must be dismissed.

### 2. Damages

"A plaintiff bringing a [RESPA] § 2605 claim must sufficiently allege one of two types of damages: (1) 'actual damages to the borrower as a result of the failure' to comply with § 2605; or (2) statutory damages 'in the case of a pattern or practice of noncompliance with the requirements' of § 2605." Gorbaty v. Wells Fargo Bank, N.A., Nos. 10-CV-3291, 10-CV-3354, 2012 WL 1372260, at *3 (E.D.N.Y. Apr. 18, 2012) (quoting 12 U.S.C. § 2605(f)). Plaintiff alleges that she "sustained actual damages . . . , including but not limited to the following: excessive interest charges caused by failure to correct the account, unnecessary late charges caused by failure to correct the account, denial of credit caused by failure to adequately report late payments to credit reporting agencies, photocopying charges, postal charges, travel expenses, attorney costs, worry, anxiety, emotional distress and harm, as well as inconvenience." Am. Compl. at ¶ 20.

Plaintiff's allegations are conclusory and unsupported by the factual allegations in the

11

amended complaint. See Corazzini v. Litton Loan Serv. LLP, No. 09-CV-199, 2010 WL

6787231, at *12 (N.D.N.Y. June 15, 2010) ("[T]he courts have consistently dismissed

complaints under RESPA if they do not allege actual damages or state merely that in a

conclusory fashion the defendant caused damages to the plaintiff.") (internal quotation marks

omitted). Neither the amended complaint nor the letters sent to defendant identify any error in

the servicing of plaintiff's loan, and therefore there is no factual basis for the assertion that

defendant's failure to take corrective action in response to the letters caused actual damages to

plaintiff. See Gorbaty, 2012 WL 1372260, at *3 ("A plaintiff seeking actual damages under

[RESPA] § 2605 must allege that the damages were proximately caused by the defendant's

violation of RESPA."); cf. Kapsis v. Am. Home Mortg. Serv. Inc., --- F. Supp.2d ---, 2013 WL

544010, at *16 (E.D.N.Y. Feb. 14, 2013) (holding that the plaintiff adequately alleged actual

damages where he asserted that the defendant misapplied the payments on his loan); see also In

re Griffin, No. 10-22431, 2010 WL 3928610, at *6 (S.D.N.Y. Aug. 31, 2010) ("[I]f a complaint

in a nonspeculative fashion asserted that a servicer or a lender had misapplied the borrowers'

payments on the loan, it would clearly assert damages. And the failure to correct those damages

. . . would constitute proximate cause of actual damages . . . . [T]hat would be a different

scenario than simply saying that, for example, the servicer's failure to respond to a QWR caused

damages without specifying how those damages were caused.").

Moreover, plaintiff has failed to allege any facts to support the assertion that the alleged

RESPA violations proximately caused her "emotional distress and harm." In plaintiff's response

to the pending motion, she asserts that her husband "was diagnosed with severe emotional strain

related to the potential loss of their family home" and that she, as her husband's primary care-

taker, "has also been under extreme stress in dealing with her husband's emotional strain and the

12

possibility of losing her home." Pl. Memo. at 15. Even if plaintiff and her husband suffered emotional distress from the possible loss of their home, plaintiff has not alleged that this injury was proximately caused by defendant's failure to comply with RESPA, i.e., the form and timing of its response to plaintiff's letters. See, e.g., Stein, 2010 WL 5559528, at *5 ("To survive summary judgment on a RESPA claim, the plaintiff must show actual damage caused by a servicer's failure to provide information."). Therefore, plaintiff has failed to allege that she suffered actual damages due to defendant's alleged RESPA violations.[6]

Plaintiff has also failed to allege that defendant engaged in a "pattern or practice of noncompliance" with RESPA, and therefore may not recover statutory damages. According to plaintiff, she "brought this suit as a class action given [defendant's] standard form response to her clearly identified QWRs," and because defendant, "[r]ather than to provide information requested in QWRs, arguably . . . finds it more strategically advantageous to direct its customers to its financial modification division rather than providing loan servicing histories that might potentially undermine the accuracy of the underlying loan." Pl. Memo. at 16. Plaintiff further asserts that defendant's "pattern and practice of redirecting QWR inquiries to its financial modification division was clearly evidenced in [the] letter to [plaintiff] with the salutation: 'Dear CitiMortgage Customer(s).'" Id.

Plaintiff's first two (2) letters were identical and sent to defendant on consecutive days, and the third letter was nearly identical except for the addition of an assertion that defendant

---

[6]     To the extent that plaintiff asserts that the cost of sending the letters to defendant and of initiating this lawsuit constitute actual damages, this argument is rejected.  See Soriano v. Countrywide Home Loans, Inc., No. 09-CV-2415, 2011 WL 2175603, at *4 (N.D. Cal. June 2, 2011); Lal v. Am. Home Serv., Inc., 680 F. Supp.2d 1218, 1223 (E.D. Cal. 2010) ("[S]imply having to file suit [does not] suffice as a harm warranting actual damages. If such were the case, every RESPA suit would inherently have a claim for damages built in.").

13

failed to adequately respond to the first two (2) letters. Even if these letters triggered defendant's RESPA duties, its failure to respond in accordance with RESPA on two (2) occasions to practically identical letters does not establish that it was defendant's "pattern or practice" to violate the statute. See Kapsis, 2013 WL 544010, at *13 ("Though there is no magic number of violations that create a pattern or practice of noncompliance, courts have held that two violations of RESPA are insufficient to support a claim for statutory damages.") (internal quotation marks omitted); Gorbaty, 2012 WL 1372260, *5 ("Two violations [of RESPA] do not qualify as a standard or routine way of operating, or a wide-ranging and institutionalized practice.") (internal quotation marks, alteration and citation omitted); McClean v. GMAC Mortg. Corp., 595 F. Supp.2d 1360, 1365 (S.D. Fla. 2009) (holding that violation of RESPA on two (2) occasions is "insufficient to support a pattern or practice of noncompliance"); Selman v. CitiMortgage, Inc., No. 12-0441, 2013 WL 838193, at *10 (S.D. Ala. Mar. 5, 2013) ("[P]laintiffs' suggestion that the Second Amended Complaint adequately alleges a pattern and practice by referring to two instances in which CitiMortgage failed timely to respond to QWRs is legally infirm."); Garcia v. Wachovia Mortg. Corp., 676 F. Supp.2d 895, 909 (C.D. Cal. 2009) ("[A]lmost as a matter of definition, a single failure to respond to a Qualified Written Request does not state a claim for a 'pattern or practice' of doing so.").

For the foregoing reasons, plaintiff has failed to allege a basis for either actual or statutory damages, and therefore her RESPA claims must be dismissed. See Corazzini, 2010 WL 6787231, at *12 ("Plaintiff's failure to establish that she suffered actual damages from the alleged RESPA violations is fatal to her claim."); Gorham-DiMaggio v. Countrywide Home Loans, Inc., 08-CV-19, 2009 WL 1748743, at *8 (N.D.N.Y. June 19, 2009) ("[B]y alleging a breach of RESPA duties alone without alleging actual damages and the proximate cause of the

14

breach of duty to those damages, Plaintiff fails to state a RESPA claim.").

B.    Count II – Violation of RESPA § 2605(e)(3)

"During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency . . . ." 12 U.S.C. § 2605(e)(3) ("section 2605(e)(3)"). "To allege a violation of [section] 2605(e)(3), plaintiff must assert (i) that she sent defendants a qualified written request; (ii) that defendants submitted information regarding plaintiff's overdue payments to a credit reporting agency; and (iii) that defendants submitted such information within 60 days after defendants received plaintiff's qualified written request." Midouin v. Downey Sav. & Loan Ass'n, F.A., 834 F. Supp.2d 95, 111 (E.D.N.Y. 2011).

Plaintiff's section 2605(e)(3) claim, like her claims under sections 2605(e)(1) and (e)(2), must be dismissed because her letters did not trigger defendant's RESPA duties and she has failed to adequately allege recoverable damages.  Furthermore, the claim must be dismissed because plaintiff has failed to allege that defendant submitted information regarding her overdue payments to a credit reporting agency within sixty (60) days of receiving her letters.

The allegation that defendant "fail[ed] to remove information regarding any alleged overdue payments owed by Plaintiff to any consumer reporting agencies," Am. Compl. at ¶¶ 1, 34, does not state a violation of section 2605(e)(3) because a QWR does not trigger a duty to remove previously reported information.  Moreover, plaintiff's conclusory allegation (in a paragraph of the amended complaint that formulaically recites the elements of a RESPA violation) that defendant "[f]ailed to stop reporting any overdue payment to consumer reporting

15

agencies during the 60 day period," Am. Compl. at ¶ 13, is "insufficient to state a violation of [section] 2605(e)(3)" because it does not allege "when such information was provided" to the credit reporting agency. Midouin, 834 F. Supp.2d at 111. See also Iqbal, 556 U.S. at 678 ("'[A] formulaic recitation of the elements of a cause of action will not do.'") (quoting Twombly, 550 U.S. at 555); Nichols v. Wash. Mut. Bank, No. 07-CV-3216, 2007 WL 4198252, at *5 (E.D.N.Y. Nov. 21, 2007) ("Were [the court] required to treat such legal conclusions couched as factual allegations as true, Rule 12(b)(6) would be a dead letter.") (internal quotation marks and citation omitted)). Therefore, plaintiff's section 2605(e)(3) claim must be dismissed.

      C.      Count III – Violation of FDCPA

            1.      FDCPA § 1692c

FDCPA § 1692c ("section 1692c") provides, in relevant part, that "(a) . . . a debt collector may not communicate with a consumer in connection with the collection of any debt . . . (2) if the debt collector knows the consumer is represented by an attorney . . . ." Plaintiff alleges that two (2) communications from defendant violated this provision because they were sent directly to plaintiff rather than to her counsel, even though defendant knew that she was represented by counsel at the time: (1) the financial packet mailed in July 2011, Compl. Ex. 7; and (2) the March 14, 2012 response to Roth's complaint with the Department of Financial Services, Compl. Exs. 11, 12. See Pl. Memo. at 18.[7] Defendant argues that these communications cannot give rise to an FDCPA violation because neither was an attempt to collect plaintiff's debt: the financial packet was an attempt to restructure, not collect, the debt, and the March 14, 2012 correspondence was sent in response to an administrative proceeding initiated by plaintiff.

---

[7]     Plaintiff apparently concedes that the claim based upon defendant's April 2011 letter is barred by the one-year limitations period.

[Docket Entry No. 14] at 19-20.

The financial packet was titled "Workable Solutions" and requested financial information from plaintiff so that defendant could "evaluate [her] situation and determine what, if any, options" were available to "avoid foreclosure." Compl. Ex. 7 at 3. Courts have held that communications which do not demand payment and relate to debt restructuring do not seek collection of a debt, and therefore cannot give rise to an FDCPA violation. See Kennedy v. Wells Fargo Bank, N.A., No. CV 11-4635, 2011 WL 4526085, at *3 (C.D. Cal. Sept. 28, 2011) ("Contact by a lender or loan servicer for the purpose of restructuring payments on a debt is not 'collection of a debt' for the purposes of the FDCPA when the lender or servicer does not demand payment for past amounts owed."); Marshall v. Deutsche Bank Nat. Trust Co., No. 10-CV-754, 2011 WL 345988, at *3 (E.D. Ark. Feb. 1, 2011) ("The letters regarding loan modification were attempts to restructure the debt instrument and lower the payments, not a demand for payment. . . . Thus the communications . . . do not appear to be communications to collect a debt that could give rise to a FDCPA violation."), aff'd, 445 F. App'x 900 (8th Cir. 2011); see also Bailey v. Sec. Nat'l Servicing Corp., 154 F.3d 384, 388-89 (7th Cir. 1998). It is not necessary for the Court to further address this issue, as plaintiff has failed to respond to defendant's argument in her opposition to the motion (instead only repeating her argument that defendant "was obligated to communicate with counsel in its letter of July 11, 2011"), and therefore the FDCPA claim based upon the financial packet is deemed abandoned.[8] See Tamir v.

---

[8]    In response to defendant's argument that plaintiff failed to adequately allege that defendant is a "debt collector" as defined by the FDCPA, plaintiff has asserted that the presence of a disclaimer on the financial packet that "CitiMortgage is a debt collector and any information obtained will be used for that purpose" is sufficient to establish that defendant is a debt collector. Pl. Memo. at 17. Plaintiff did not raise this argument with respect to whether the financial packet was a communication "in connection with the collection of any debt." 15 U.S.C.

17

Bank of N.Y. Mellon, No. 12-CV-4780, 2013 WL 4522926, at *2 (E.D.N.Y. Aug. 27, 2013) ("Plaintiff has failed to provide any response to Defendants' plausible arguments, and, therefore, the Court deems the TILA claim abandoned."); Thomas v. N.Y.C. Dep't of Educ., --- F. Supp.2d ---, No. 10-CV-464, 2013 WL 1346258, at *17 (E.D.N.Y. Mar. 29, 2013) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (internal quotation marks omitted).

With respect to the March 14, 2012 correspondence, plaintiff argues that her complaint to the Department of Financial Services did not relieve defendant of its duty to communicate with her counsel because "to suggest that CitiMortgage owes no obligation to communicate with legal counsel after legal counsel sends a written notification of representation is ludicrous." Pl. Memo. at 18. Plaintiff has cited no authority for this argument.

"[T]he FDCPA was intended to protect consumers from communications initiated by debt collectors, not consumers." Nichols, 2007 WL 4198252, at *4; see also Gorham-Dimaggio v. Countrywide Home Loans, Inc., No. 05-CV-0583, 2005 WL 2098068, at *2, (N.D.N.Y. Aug. 30, 2005) (stating that "when the consumer initiates the conversation, many of the policy reasons behind the FDCPA disappear," and that the court had "not found a single [FDCPA] case where a

---

§ 1692c(a). However, insofar as plaintiff intended to do so, this argument is rejected. See, e.g., Derisme v. Hunt Leibert Jacobson P.C., 880 F. Supp.2d 339, 373 (D. Conn. 2012) ("[T]he fact that [the defendant] took certain precautions to comply with the FDCPA [by including disclaimers in his correspondence] is not dispositive to the Court's analysis as to liability under the FDCPA."); Gillespie v. Chase Home Fin., No. 3:09-CV-191, 2009 WL 4061428, at *2, 5-6 (N.D. Ind. Nov. 20, 2009) (holding that a letter discussing "a variety of workout options" and not demanding payment was not within the scope of the FDCPA, despite a disclaimer stating that "the debt collector is attempting to collect a debt and any information obtained will be used for that purpose," as such a disclaimer "did not alter the nature of the communication or the information provided in the letter") (citing Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 399 (6th Cir. 1998) ("We note that the mere fact that the letter states at the bottom that it 'is an attempt to collect a debt' does not transform the letter into an unlawful demand for payment.")).

communication instituted by the consumer implicated § 1692e," which only "applies to communications 'in connection with the collection of any debt'"). The March 14, 2012 correspondence only responded to plaintiff's complaint to the Department of Financial Services and did not demand payment or otherwise mention the status of plaintiff's loan, stating that defendant rejected the "unsubstantiated allegations" in the complaint but that it would "research and respond to any specific servicing questions" if plaintiff provided "a statement of the reasons why [she] believe[s] there have been errors in the servicing of [her] loan." Compl. Ex. 11. Therefore, the correspondence did not relate to the collection of plaintiff's debt and cannot give rise to an FDCPA claim.

        2.    FDCPA § 1692d

FDCPA § 1692d ("section 1692d") provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt" and offers a non-exhaustive list of proscribed conduct:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
>
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
>
> (4) The advertisement for sale of any debt to coerce payment of the debt.
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

The amended complaint does not contain any allegation that defendant engaged in conduct that caused the harassment or abuse of plaintiff. <u>See Harvey v. Great Seneca Fin. Corp.</u>, 453 F.3d 324, 330 (6th Cir. 2006) ("Courts have . . . dismissed claims filed pursuant to § 1692d as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor."). However, in her response to the motion, plaintiff argues that defendant's "refusal to communicate with legal counsel, and her instead, was intended to circumvent her ability to accurately determine the accuracy of her outstanding debt," and that defendant's mailing of the financial packet to plaintiff was "intentional conduct [that] constitutes oppressive and abusive behavior, particularly where the lender knows that legal counsel is seeking to protect the borrower's rights." Pl. Memo. at 19-20.

As discussed above, the financial packet was not mailed to plaintiff "in connection with the collection of a debt" and therefore cannot form the basis for a section 1692d violation. Moreover, there is no basis to conclude that the "natural consequence" of sending a financial packet offering loan workout solutions, even if it violated section 1692c, is "to harass, oppress, or abuse" the borrower. Therefore, plaintiff's section 1692d claim is dismissed.[9]

D.      Count IV - New York General Business Law § 349

GBL § 349(a) states that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful." "To state a claim under [GBL] § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." <u>Spagnola v. Chubb Corp.</u>, 574 F.3d 64, 74 (2d Cir. 2009) (citing <u>Maurizio v. Goldsmith</u>,

_____

[9]      Given the disposition of plaintiff's FDCPA claims, it is not necessary for the Court to address defendant's argument that it does not qualify as a "debt collector" under the statute.

20

230 F.3d 518, 521 (2d Cir. 2000) (per curiam)); Koch v. Acker, Merrall & Condit Co., 18

N.Y.3d 940, 941 (2012) (same). "[T]he gravamen of [a GBL § 349 claim] must be consumer

injury or harm to the public interest." Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256,

264 (2d Cir. 1995) (internal quotation marks omitted).

Plaintiff has failed to allege that defendant engaged in conduct that was "misleading in a

material respect." According to plaintiff, defendant "deceptively misle[d] [her] to the wrong

[QWR] address, ignoring [her] QWRs." Pl. Memo. at 21. There is no such allegation in the

amended complaint. However, plaintiff appears to be referring to the fact that the QWR address

designated on the back of plaintiff's monthly mortgage statements changed some time between

May 2011 and March 2012.[10] As discussed above, supra § III.A.1, the QWR address was clearly

indicated on the monthly statements and there was only one (1) address listed on each statement.

Therefore, no reasonable consumer could have been misled by the change of address. See

Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000) ("Whether a representation or an omission, the

deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the

circumstances.") (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85

N.Y.2d 20, 26 (1995) (applying an "objective definition of deceptive acts and practices, whether

representations or omissions, limited to those likely to mislead a reasonable consumer acting

reasonably under the circumstances . . . , which may be determined as a matter of law or fact (as

individual cases require)")). Moreover, plaintiff did not send her letters to either address

provided on the monthly statements, and therefore the change of address could not have caused

any injury.

---

[10]     Plaintiff's references to regulatory actions against defendant that allegedly "clearly
evidence a broad based, wide spectrum of corporate abuses, which take advantage of numerous
unrepresented individuals in mortgage default," Pl. Memo. 21, are inapposite.

Even if defendant engaged in materially misleading conduct, plaintiff has failed to adequately allege that she was injured as a result. According to plaintiff, she "need only allege that the defendant's material deceptive act or acts caused the injury," and the "reasonably foreseeable result of [defendant's] violation of RESPA, the FDCPA and [GBL] § 349, is that [plaintiff] and others similar [sic] situated suffer reasonably expected economic damages and emotion [sic] distress associated with possible loss of their residential homes." Pl. Memo. at 22. Such conclusory allegations are insufficient to state a claim that plaintiff was injured by defendant's conduct. See Nicholson v. Forster & Garbus LLP, No. 11-CV-524, 2012 WL 273150, at *3 (E.D.N.Y. Jan. 30, 2012) ("Plaintiff alleges that '[d]efendants' wrongful and deceptive acts have caused injury and damage' and that he and 'class members' have 'suffered compensable harm,' but fails to explain the nature of the alleged injury or harm to the public interest. Such conclusory allegations of damages are insufficient to state a claim pursuant to Section 349."); Lane v. Fein, Such and Crane, LLP, 767 F. Supp.2d 382, 391 (E.D.N.Y. 2011) ("[P]laintiffs have alleged no facts—aside from their conclusion that they suffered emotional distress—that show that the alleged acts of the defendant caused any quantifiable damage."); Stadt v. Fox News Network LLC, 719 F. Supp.2d 312, 324 (S.D.N.Y. 2010) ("[T]he Complaint lack[s] any allegations as to how consumers were harmed by [defendant's] 'misleading' behavior . . . "); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Therefore, plaintiff's GBL § 349 claim must be dismissed.[11]

---

[11]      Given the disposition of this claim, it is not necessary for the Court to determine whether plaintiff adequately alleged that defendant engaged in consumer-oriented conduct.

IV.    Conclusion

For the foregoing reasons, defendant's motion to dismiss [Docket Entry No. 12] is granted in its entirety, and the amended complaint is dismissed. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN
United States District Judge

Dated: September 11, 2013
         Central Islip, New York